**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JAMES M. BAKER, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MBNA CORP., BRUCE L. HAMMONDS, )<br>KENNETH A. VECCHIONE, RICHARD )<br>K. STRUTHERS, CHARLES C. )<br>KRULAK, JOHN R. COCHRAN, III, )<br>MICHAEL G. RHODES, LANCE L. )<br>WEAVER, and JOHN W. SCHEFLEN, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-272 (GMS)<br><br>**E-FILE** |
| ROCHELLE PHILLIPS, on behalf of herself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MBNA CORP., BRUCE L. HAMMONDS, )<br>and KENNETH VECCHIONE, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-277 (GMS) |

[Captions continued on next page]

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
ARCA S.G.R. S.p.A. TO CONSOLIDATE ACTIONS,
TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD
PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

| | |
|---|---|
| ROBERT WILKINS, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MBNA CORP., BRUCE L. HAMMONDS, )<br>KENNETH A. VECCHIONE, RICHARD )<br>K. STRUTHERS, CHARLES C. )<br>KRULAK, JOHN R. COCHRAN, III, )<br>MICHAEL G. RHODES, LANCE L. )<br>WEAVER, and JOHN W. SCHEFLEN, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-287 (GMS) |
| LEONARD BRONSTEIN, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MBNA CORP., BRUCE L. HAMMONDS, )<br>KENNETH A. VECCHIONE, RICHARD )<br>K. STRUTHERS, CHARLES C. )<br>KRULAK, JOHN R. COCHRAN, III, )<br>MICHAEL G. RHODES, LANCE L. )<br>WEAVER, and JOHN W. SCHEFLEN, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-289 (GMS) |

[Captions continued on next page]

| | |
|---|---|
| GREG PENN, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MBNA CORP., BRUCE L. HAMMONDS, )<br>KENNETH A. VECCHIONE, JOHN R. )<br>COCHRAN, III, RICHARD K. )<br>STRUTHERS, and LANCE L. WEAVER, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-293 (GMS) |
| CLIFFORD W. JONES, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MBNA CORP., BRUCE L. HAMMONDS, )<br>and KENNETH VECCHIONE, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-316 (GMS) |
| MICHAEL D. BLUM, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MBNA CORP., BRUCE L. HAMMONDS, )<br>KENNETH A. VECCHIONE, JOHN R. )<br>COCHRAN, III, RICHARD K. )<br>STRUTHERS, and LANCE L. WEAVER, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-372 (GMS) |

[Captions continued on next page]

| | |
|---|---|
| JAMES M. BAKER, on behalf of himself and all others similarly situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MBNA CORP., BRUCE L. HAMMONDS, )<br>KENNETH A. VECCHIONE, RICHARD )<br>K. STRUTHERS, CHARLES C. )<br>KRULAK, JOHN R. COCHRAN, III, )<br>MICHAEL G. RHODES, LANCE L. )<br>WEAVER, and JOHN W. SCHEFLEN, )<br>)<br>Defendants. ) | Civil Action No. 1:05-CV-389 (GMS) |

**PRELIMINARY STATEMENT**

MBNA Corp. ("MBNA" or the "Company") institutional investor ARCA S.G.R. S.p.A. ("ARCA" or "Movant") has losses totaling approximately $3,421,027 as a result of its investments in MBNA. Accordingly, ARCA is believed to have suffered the largest financial loss of any other movant and, as such, has the largest financial interest in the outcome of this litigation. As the most adequate plaintiff, as defined by Private Securities Litigation Reform Act of 1995 ("PSLRA"), ARCA hereby moves for its appointment as lead plaintiff of a proposed class of persons or entities who purchased or acquired the securities of MBNA between October 16, 2003 and April 21, 2005, inclusive[1] (the "Class Period").

**INTRODUCTION**

The above-captioned actions (the "Related Actions") are securities purchaser class action lawsuits that have been brought against certain officers and/or directors of the Company alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

ARCA, with losses of approximately $3,421,027, in connection with its purchases of MBNA securities during the Class Period, is suitable and adequate to serve as lead plaintiff.[2] ARCA is a Milan, Italy based mutual fund manager with over $13 billion in assets under

---

[1] While different complaints have alleged varying class periods, ARCA has utilized the longest class period of October 16, 2003 through April 21, 2005 for the purposes of this motion.

[2] The losses suffered by ARCA are not the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's securities.

management. ARCA has submitted its sworn certification signed by its Vice General Manager, Mr. Giampaolo Novelli, who is duly authorized to pursue this litigation on behalf of ARCA, to bind ARCA into litigation, demonstrating its desire to serve as a lead plaintiff in these actions and its understanding of the attendant duties and obligations of serving as lead plaintiff. *See* Snyder Decl. at Exhibit A.[3] ARCA's losses of $3,421,027 represent the largest known financial interest of any Class member seeking to be appointed as lead plaintiff. *See* Snyder Decl. at Exhibit C. ARCA is not aware of any other class member that has filed an action or filed an application for appointment as lead plaintiff that sustained greater financial losses. In addition, ARCA satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and, therefore, is qualified for appointment as lead plaintiff in these actions. Thus, as demonstrated herein, ARCA is presumptively the most adequate plaintiff and should be appointed lead plaintiff.

ARCA respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D of the Exchange Act, 15 U.S.C. § 78u-4 (a)(3)(B), as amended by the PSLRA, for an order: (1) consolidating all class actions concerning the subject matters of these actions pursuant to Fed. R. Civ. P. 42(a); (2) appointing ARCA to serve as Lead Plaintiff pursuant to the Exchange Act; (3) approving ARCA's selection of Schiffrin & Barroway, LLP as Lead Counsel for the Class; and (4) approving ARCA's selection of Frank, Rosen, Snyder & Moss, L.L.P. to serve as Liaison Counsel for the Class.

---

[3] ARCA's sworn certification documenting its transactions pursuant to the federal securities laws is attached as Exhibit A to the Declaration of Marc H. Snyder In Support of the Motion of ARCA S.G.R. S.p.A. To Consolidate Actions, To Be Appointed Lead Plaintiff and For Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel (the "Snyder Decl.").

**PROCEDURAL BACKGROUND**

The first of the Related Actions was commenced in this jurisdiction on or about May 5, 2005. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on May 5, 2005, the first notice that a class action had been initiated against defendants was published over a widely circulated national business-oriented wire service advising members of the proposed class of their right to move the Court to serve as lead plaintiff no later than July 5, 2005. *See* Snyder Decl. at Exhibit B.

ARCA is a class member (*see* Snyder Decl. at Exhibit A) and is timely filing this motion within the 60 day period following publication of the May 5, 2005 notice pursuant to Section 21D of the PSLRA.

**STATEMENT OF FACTS**[4]

MBNA is a Maryland corporation with its principal executive offices located in Wilmington, Delaware. MBNA is an international financial services company providing lending, deposit, and credit insurance products. In addition, the Company makes consumer loans and commercial loans to small businesses. MBNA is also the parent company of MBNA America Bank, N.A. ("MBNA America"), through which it is an issuer of endorsed credit cards marketed primarily to members of associations, customers of financial institutions and other institutions.

Throughout the Class Period, defendants failed to disclose that the Company grossly underestimated the cost of the restructuring charge associated with MBNA's previously announced plan to reduce overhead by offering early retirement to its workers. Furthermore, the Company was experiencing both high levels of customer delinquencies and high levels of

---

[4] These facts were derived from the allegations contained in the class action styled as *Wilkins v. MBNA Corp., et al.,* No. 1:05-CV-287 (GMS).

customers, particularly on high-interest-rate credit cards, paying down their bills. Therefore, due to faster customer pay downs, MBNA was forced to re-evaluate its interest only strips which resulted in a $206 million loss in securitization activity. This meant that the Company's projected earnings growth of 10 percent in fiscal 2005 lacked a reasonable basis when made.

On April 21, 2005, MBNA issued a press release wherein it stated that based on first quarter results and trends, management believed that the Company would fall well below its fiscal 2005 growth objective of 10 percent. In addition, MBNA announced unexpected high payment volumes from U.S. credit card customers and announced a restructuring charge of $767.6 million. This news was coupled with the announcement that MBNA incurred a net loss of $206.6 million from securitization activity.

As a result of the aforementioned news, shares of MBNA fell over 16.5 percent to close at $19.28 per share on April 21, 2005.

## ARGUMENT

**I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

Each of the Related Actions involves class action claims on behalf of class members who purchased or otherwise acquired MBNA securities during the Class Period. Each of the Related Actions asserts essentially similar and overlapping class claims brought on behalf of purchasers of MBNA securities who purchased in reliance on the materially false and misleading statements and omissions at all relevant times. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Fields v. Biomatrix, Inc.,* 198 F.R.D. 451, 454 (D.N.J. 2000). That test is met here. Therefore, these Related Actions should be consolidated.

II.     **ARCA SHOULD BE APPOINTED LEAD PLAINTIFF**

    A.     **The Procedural Requirements Pursuant To The PSLRA**

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *Business Wire* on May 5, 2005.[5] *See* Snyder Decl. at Exhibit B. This notice indicated that applications for appointment as lead plaintiff were to be made no later than July 5, 2005. Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, according to the PSLRA, the Court shall appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members within 90 days after publication of the initial notice of pendency. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-

---

[5] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

>   (aa)  has either filed the complaint or made a motion in response to a notice . . .
>
>   (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>   (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii).  *See In re Cendant Corp. Litig.,* 264 F.3d 201, 262 (3d Cir. 2001) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)).

The purpose behind this detailed procedure is to encourage large investors, like ARCA, to take control of private securities litigation.  Moreover, it reflects Congress' view that institutional plaintiffs, like ARCA, have the expertise and financial wherewithal to seize the reigns of these class actions rather than ceding control to the lawyers.  *See Nice Systems*, 188 F.R.D. at 215-216; *In re Donnkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (citing Conference Report of Securities Reform, H.R. Rep. No. 369, 104 Cong., 1st Sess. 31, *reprinted in* U.S.C.C.A.N. 679, 730-31).

### B.     ARCA Is "The Most Adequate Plaintiff"

#### 1.     ARCA Has Made A Motion For Its Appointment As Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the notice, ARCA timely moves this Court to be appointed lead plaintiff on behalf of all plaintiffs and class members covered by the Related Actions and any other actions deemed related by this Court.

### 2. ARCA Has The Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member who represents the largest financial interest in the relief sought by the action. *See Cendant*, 264 F.3d at 262. As is demonstrated herein, ARCA (with losses of $3,421,027) has the largest known financial interest in the relief sought by the Class. *See* Snyder Decl. at Exhibit C.

### 3. ARCA Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Cendant,* 264 F.3d at 263 ("The initial inquiry . . . should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy"); *see also In re Lucent Techs.*, 221 F. Supp. 2d 472, 486 (D.N.J. 2001) (noting that further analysis under Rule 23 is not appropriate until the class certification stage).

As detailed below, ARCA satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

        a.        **ARCA Fulfills The Typicality Requirement**

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if claims "arise from the same event or course of conduct that gave rise to the claims of the other class members and are premised upon the same legal theory." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 107 n.13 (D.N.J. 1999); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985), *cert. denied*, 474 U.S. 946 (1985) (typicality "permits the court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment"). However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Party City*, 189 F.R.D. at 107.

ARCA seeks to represent a class of purchasers of MBNA securities which have identical, non-competing and non-conflicting interests. ARCA satisfies the typicality requirement because, just like all other class members, it: (1) purchased or acquired MBNA securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby. Thus, ARCA's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

        b.        **ARCA Fulfills The Adequacy Requirement**

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy

of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant is clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 78u-4(a)(3)(B). As detailed above, ARCA shares common questions of law and fact with the members of the Class and its claims are typical of the claims of other class members. Furthermore, ARCA already has taken significant steps demonstrating that it has and will protect the interests of the Class: it has executed a sworn certification detailing its Class Period transactions and expressing its willingness to serve as lead plaintiff; it has timely moved this Court to be appointed as lead plaintiff in these actions; and it has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner. *See Cendant*, 264 F.3d at 264 (holding that courts should consider all pleadings filed in support of the movant's lead plaintiff application when evaluating adequacy). Furthermore, ARCA has the largest known financial interest so that its "financial stake in the litigation provides an adequate incentive for the [Movant] to vigorously prosecute the action." *In re Milestone Scientific*, 183 F.R.D. 404, 416 (D.N.J. 1998). Thus, ARCA, in addition to having the largest financial interest, also *prima facie* satisfies the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 of the Federal Rules of Civil Procedure and, therefore, satisfy all elements of the Exchange Act's prerequisites for appointment as lead plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Moreover, the legislative history of the PSLRA demonstrates that Congress intended to encourage large investors, such as ARCA, to come forward to serve as lead plaintiff. As the Statement of Managers of the Act noted:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiff by requiring courts to presume that the member of the purported class with the largest financial stake in the relief is the "most adequate plaintiff."
>
> <u>Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.</u>

House Conference Report No. 104-369, 104th Cong. 1st Sess. at 34 (1995) (Emphasis added).

> Similarly, the Senate report on the Act states in pertinent part:
> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts.
>
> <u>Institutions with large stakes in class actions have much the same interest as the plaintiff class generally</u> . . . .

Senate Report No. 104-98, 104th Cong. 1st Sess. at 11 (1995) (Emphasis added).

Thus, ARCA is the prototypical lead plaintiff under the PSLRA.

### III.   THE COURT SHOULD APPROVE ARCA'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class.  In that regard, ARCA has selected and retained Schiffrin & Barroway, LLP to serve as Lead Counsel for the Class and Frank, Rosen, Snyder & Moss, L.L.P. to serve as Liaison Counsel for the Class.  Schiffrin & Barroway, LLP has extensive experience in prosecuting complex securities actions and is well qualified to represent the Class.  *See* Snyder Decl. at Exhibit D.

Because there is nothing to suggest that ARCA or its counsel will not fairly and adequately represent the Class, or that the Movant is subject to unique defenses -- which is the *only* evidence that can rebut the presumption of adequacy under the Exchange Act -- this Court should appoint ARCA as lead plaintiff and approve its selection of Schiffrin & Barroway, LLP as Lead Counsel for the Class and Frank, Rosen, Snyder & Moss, L.L.P. as Liaison Counsel for the Class.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (a) consolidate for all purposes the Related Actions against defendants; (b) appoint ARCA as Lead Plaintiff; (c) approve Schiffrin & Barroway, LLP as Lead Counsel for the Class; and (d) approve Frank, Rosen, Snyder & Moss, L.L.P. as Liaison Counsel for the Class.

Dated: July 5, 2005

Respectfully submitted,

**FRANK, ROSEN, SNYDER & MOSS, L.L.P.**

By:   /s *Marc H. Snyder* (#3791)
Marc H. Snyder (#3791)
1813 Marsh Road, Suite D
Wilmington, DE 19810
Telephone:   (302) 475-8060
Facsimile:   (302) 475-8182

**Proposed Liaison Counsel**

**SCHIFFRIN & BARROWAY, LLP**
Stuart L. Berman
Sean M. Handler
Robin Winchester
280 King of Prussia Road
Radnor, PA 19087
Telephone:   (610) 667-7706
Facsimile:    (610) 667-7056

**Proposed Lead Counsel**